UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation<br><br>          Plaintiff,<br><br>v.<br><br>MILLIONS MONSTER CLEAN LLC, a Georgia limited liability company,<br><br>          Defendant. | Civil Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Monster Energy Company ("Plaintiff" or "MEC"), a Delaware corporation, by and through its undersigned attorneys, files this Complaint against Defendant Millions Monster Clean LLC ("Defendant"), and alleges as follows:

### I. JURISDICTION AND VENUE

1. This is an action for (a) trademark infringement under 15 U.S.C. § 1114; (b) trademark infringement and false designation of origin arising under 15 U.S.C. § 1125(a); (c) federal dilution arising under 15 U.S.C. § 1125(c); (d) copyright infringement arising under 17 U.S.C. § 501 *et seq.*; (e) trademark dilution arising under O.C.G.A. § 10-1-451(b); (f) deceptive trade practices under

O.C.G.A. § 10-1-370 *et seq.*; (g) encroachment arising under O.C.G.A. § 23-2-55; and (h) unfair competition arising under the common law of the State of Georgia.

2.     The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1338(a) over the claims that relate to trademark infringement, false designation of origin, and trademark dilution under 15 U.S.C. §§ 1116 and 1121(a) and that relate to copyright infringement under 17 U.S.C. § 501 *et seq.*, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims in this Complaint which arise under state statutory and common law, because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendant because it has a continuous, systematic, and substantial presence within this judicial district and within Georgia.  Defendant has its principal place of business in this judicial district.  Also, by selling and offering for sale infringing services and products in this judicial district, and by committing acts of trademark infringement, false designation of origin, trademark dilution, copyright infringement, and/or unfair competition in this judicial district, Defendant's acts form a substantial part of the events or omissions giving rise to MEC's claims.

- 2 -

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c), as Defendant resides in this Judicial District and a substantial portion of the events herein took place in this Judicial District.

## II.  THE PARTIES

5.     Plaintiff Monster Energy Company is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.     MEC is informed and believes, and on that basis alleges, that Defendant Millions Monster Clean LLC is a limited liability company organized and existing under the laws of the State of Georgia, having a principal place of business at 1202 Huff Road, Atlanta, Georgia 30318.

7.     MEC is informed and believes, and on that basis alleges, that Defendant operates the website www.millionsmonsterclean.com.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     MEC's Trademarks and Copyrights

8.     MEC is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.

9.     In 2002, long before Defendant's acts described herein, MEC

launched its MONSTER ENERGY® drink brand, bearing its now famous ®

mark ("Claw Icon Mark"), MONSTER™ mark and MONSTER ENERGY® Mark.

A true and correct representation of MEC's original MONSTER ENERGY®

product is shown below.



10.     MEC is the owner of numerous trademark registrations for marks that

incorporate its famous Claw Icon Mark, and many of which also include its famous

MONSTER™ and MONSTER ENERGY® Marks, including the following U.S.

Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |

11.    MEC is also the owner of numerous other trademark registrations for its famous MONSTER ENERGY® Mark and for other marks incorporating its famous MONSTER™ mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/03 | 01/17/06 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/03 | 01/17/06 |
| MONSTER ENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/02 | 02/07/06 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products | 05/07/03 | 08/29/06 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  |  | are pasteurized or not |  |  |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/07 | 10/11/11 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/07 | 10/11/11 |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 08/24/2011 | 03/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/06/2010 | 04/17/2012 |
| MONSTER CUBA-LIMA | 4,269,880 | Nutritional supplements in liquid form Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/14/2012 | 01/01/2013 |
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks | 07/02/2010 | 07/30/2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| | | enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MUSCLE MONSTER | 4,451,535 | Vitamin fortified beverages Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy shakes; chocolate energy shakes Ready to drink coffee based beverages; ready to drink chocolate-based beverages | 07/10/2013 | 12/17/2013 |
| MONSTER ENERGY ULTRA RED | 4,532,292 | Nutritional supplements in liquid form ; vitamin fortified beverages Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/13/2013 | 05/20/2014 |
| MONSTER ENERGY ULTRA BLUE | 4,534,414 | Nutritional supplements in liquid form; vitamin fortified beverages Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 01/02/2013 | 05/20/2014 |

12.    Attached hereto as Exhibits A1-A26 are true and correct copies of MEC's trademark registrations identified in paragraphs 10-11 of this Complaint, which are hereby incorporated by reference.  Collectively, those registrations and trademarks referenced in paragraphs 10-11 of this Complaint are referred to as the "Asserted Marks."

13.    Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,134,841, 3,434,822, 3,434,821, 3,044,315, 3,044,314, 3,057,061, and 3,134,842 are now incontestable.

14.    In addition, MEC is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon Mark, including at least U.S. Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215, and VA 1-789-900.  Attached hereto as Exhibits B through E are true and correct copies of MEC's copyright registrations.

15.    MEC's successful line of MONSTER™ drinks has now grown to include numerous well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster™ Assault®; Monster™ Khaos®, Monster M-80®; Ubermonster®; Monster Energy® Import and Monster Energy® Import Light; Punch Monster® ; Monster Energy® Absolutely Zero;

- 10 -

Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy Ultra Red®; Monster Cuba-Lima®; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes MEC's Monster Rehab® Rojo Tea + Energy, Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy-based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and ⫲® Monster Energy® which is a five ounce super concentrated energy drink (referred to collectively as "the MONSTER™ line of drinks").

16.   Shown below are true and accurate representative pictures illustrating some of MEC's MONSTER™ line of drinks.





17.   As shown in the images above, the containers of MEC's MONSTER™ line of drinks are prominently marked with MEC's Claw Icon Mark and MONSTER™ mark.

18.   MEC's Claw Icon Mark and MONSTER™ mark are the subject of substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of drinks and MONSTER™ apparel and accessories.  Since 2002, MEC has spent approximately $3 billion dollars on promoting and marketing its MONSTER™ brand.

19.     MEC has and continues to widely market and promote its Claw Icon Mark and MONSTER™ mark in the industry and to consumers by displaying the Claw Icon Mark and/or MONSTER™ mark on more than 10 billion cans sold worldwide to date.  MEC's promotional efforts also include – by way of example but not limitation – widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the Claw Icon Mark and/or MONSTER™ mark, trucks and other vehicles bearing the Claw Icon Mark and/or MONSTER™ mark, in magazines and other industry publications, on the MONSTER ENERGY® website and other Internet websites, attendance at trade shows, and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.

20.     Shown below are true and accurate representative pictures illustrating just some of the examples of MEC's marketing and promotional efforts that use the Claw Icon Mark and MONSTER™ mark on and in connection with vehicles.

 

21.    MEC also sponsors numerous athletic events in connection with its MONSTER™ brand drinks, apparel, and accessories bearing the Claw Icon Mark and/or MONSTER™ mark.   For example, MEC sponsors or has sponsored numerous sporting events, including the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, the UEM EMX2 European Motocross Championship, and the X Games.   At MEC-sponsored events, MEC's Claw Icon Mark and MONSTER™ mark are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

22.    In addition to the sporting events above, MEC also sponsors more than 200 athletes or athletic teams who compete in a wide-variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and various classes of NASCAR racing.   Many of the events that the MEC-sponsored athletes

and athletic teams compete in are broadcast nationally on television, and all of them prominently display the Claw Icon Mark and MONSTER$^{TM}$ mark.

23.    Examples of the Claw Icon Mark and/or MONSTER™ mark appearing on vehicles as part of MEC's sponsorship activities are shown, for example, below.



  

24.    MEC's MONSTER$^{TM}$ family of products has achieved substantial commercial success.  Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide.  MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the United States.

- 15 -

25.     As a result of MEC's substantial use and promotion of its Claw Icon Mark, MONSTER™ mark, and other Asserted Marks in connection with its MONSTER™ family of products, the marks have acquired great value as specific identifiers of MEC's products and serve to identify and distinguish MEC's MONSTER™ products from those of others.  Customers in this judicial district and elsewhere readily recognize MEC's Claw Icon Mark, MONSTER™ mark, and other Asserted Marks as distinctive designations of the origin of MEC's MONSTER™ and MONSTER ENERGY® brand drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items.  The marks are intellectual property assets of enormous value as symbols of MEC and its quality products, reputation, and goodwill.

**B.     Defendant's Activities**

26.     MEC is informed and believes, and on that basis alleges, that Defendant is engaged in the business of offering automobile wash and detailing services and home and office cleaning services.

27.     Without permission or consent from MEC, Defendant is using MEC's Claw Icon Mark and MONSTER™ mark in connection with Defendant's business. For example, as shown in the images below from Defendant's website (www.millionsmonsterclean.com), Defendant is prominently using MEC's M

Claw Icon mark and is also using MEC's MONSTER™ mark in a stylized font that is identical to MEC's famous MONSTER™ mark in connection with Defendant's business name and to promote Defendant's goods and services.

  



 

True and correct printed copies from Defendant's webpage that depict the images shown above are attached hereto as Exhibit F.

28.    At no time has MEC ever given Defendant license, permission or authority to use or display MEC's Claw Icon Mark, MONSTER™ mark, or any of MEC's other Asserted Marks.

29.    On or about April 24, 2013, MEC caused to be delivered to Defendant a cease and desist letter notifying Defendant of MEC's trademark rights in the Claw Icon Mark and the MONSTER™ mark and of MEC's copyright registrations that prominently feature the Claw Icon.   The letter notified Defendant that its activities constituted trademark infringement, trademark dilution, false designation of origin, copyright infringement, and unfair competition, and demanded that Defendant, *inter alia*, cease all use of MEC's marks.

30.    Despite having received that letter, Defendant has blatantly continued its unauthorized use of MEC's Asserted Marks.

31.    MEC is informed and believes, and on that basis alleges, that Defendant is using MEC's Asserted Marks in an attempt to falsely associate its business and the goods and services it offers with MEC or to otherwise trade upon MEC's valuable reputation and customer goodwill in its MONSTER™ family of products.

32.    MEC is informed and believes, and on that basis alleges, that Defendant's use of MEC's Asserted Marks is designed and intended to cause

confusion, mistake, or deception as to the source of the goods and services that Defendant offers.

33.    MEC is informed and believes, and on that basis alleges, that Defendant's uses of MEC's Asserted Marks are intended to cause consumers and potential customers to believe that Defendant's business and the goods and services that Defendant offers are associated with MEC or MEC's MONSTER™ family of products, when they are not.

34.    By virtue of the acts complained of herein, Defendant has created a likelihood of injury to MEC's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of MEC and Defendant and MEC's and Defendant's goods and/or services, and has otherwise competed unfairly by unlawfully trading on and using MEC's Asserted Marks, or marks confusingly similar thereto, without MEC's permission or consent.

35.    At no time has MEC ever given Defendant license, permission, or authority to reproduce, prepare derivative works, or to distribute copies of MEC's Copyrighted Works.

36.     MEC is informed and believes, and on that basis alleges, that Defendant has unlawfully copied protected elements of MEC's Copyrighted Works.

37.     MEC is informed and believes, and on that basis alleges, that Defendant had access to MEC's Copyrighted Works at least because MEC uses its copyrights on its packaging (which is displayed at retail stores that are open to the public), its widespread promotional materials, and its publicly-available website. MEC is informed and believes, and on that basis alleges, that Defendant accessed this publicly available information.

38.     Defendant, as reflected, for example, on its website, has used and is using protected elements of MEC's Copyrighted Works, and has used and is using elements that are substantially similar to protected elements of MEC's Copyrighted Works.

39.     MEC is informed and believes, and on that basis alleges, that Defendant's acts complained of herein are willful and deliberate.

40.     Defendant's acts complained of herein have caused damage to MEC in an amount to be determined at trial.  Such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

41.   Defendant's acts complained of herein also have caused MEC to suffer further irreparable injury to its business.   MEC will continue to suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from its wrongful acts complained of herein.

### IV.  FIRST CLAIM FOR RELIEF

(Trademark Infringement under 15 U.S.C. § 1114)

42.   MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-41 of this Complaint as though fully set forth herein.

43.   This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

44.   Defendant has used in commerce, without permission of MEC, reproductions, copies or colorable imitations of at least MEC's marks that are the subject of MEC's U.S. Trademark Registrations listed above in paragraphs 10-11 of this Complaint, including, but not limited to, U.S. Trademark Registration Nos. 2,903,214; 3,434,821; 3,434,822; 3,963,668; 3,963,669; 4,011,301; and 4,051,650, in connection with Defendant's business and the goods and services offered by Defendant.   Such use is likely to cause confusion, or to cause mistake, or to deceive.

45.    MEC is informed and believes, and on that basis alleges, that Defendant's activities complained of herein constitute willful and intentional infringements of MEC's registered marks, and Defendant did so with the intent to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant or its goods and services are associated with, sponsored by, originated from, or are approved by MEC, when, in truth and fact, they are not.

46.    MEC is informed and believes, and on that basis alleges, that Defendant had actual knowledge of MEC's ownership and prior use of MEC's registered marks, and without the consent of MEC, has willfully and intentionally violated 15 U.S.C. § 1114.

47.    Defendant, by its actions, has damaged MEC in an amount to be determined at trial.

48.    Defendant, by its actions, has irreparably injured MEC.   Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF

(Trademark Infringement and False Designation of Origin under 15 U.S.C.

§ 1125(a))

49.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-48 of this Complaint as though fully set forth herein.

50.    This is a claim for trademark infringement and false designation of origin arising under 15 U.S.C. § 1125(a).

51.    As a result of the widespread use and promotion of MEC's Asserted Marks, including the Claw Icon and MONSTER™ marks, the Asserted Marks have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the Asserted Marks with MEC.

52.    Defendant has infringed MEC's Asserted Marks, and created a false designation of origin, by using in commerce, without MEC's permission, marks confusingly similar to MEC's Asserted Marks in connection with Defendant's business and the goods and services offered by Defendant.

53.    Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of MEC with Defendant,

and/or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a).

54.    MEC is informed and believes, and on that basis alleges, that Defendant did so with the intent to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant or the goods and services offered by Defendant are associated with, sponsored by, or approved by MEC, when they are not.

55.    MEC is informed and believes, and on that basis alleges, that Defendant had actual knowledge of MEC's ownership and prior use of the Asserted Marks, and without the consent of MEC, has willfully and intentionally violated 15 U.S.C. § 1125(a).

56.    Defendant, by its actions, has damaged MEC in an amount to be determined at trial.

57.    Defendant, by its actions, has irreparably injured MEC.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## VI.  THIRD CLAIM FOR RELIEF

(Federal Dilution under 15 U.S.C. § 1125(c))

58.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

60.     Products sold under MEC's Claw Icon Mark and MONSTER™ mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by MEC's Claw Icon Mark and MONSTER™ mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark and MONSTER™ mark, MEC's Claw Icon Mark and MONSTER™ mark are famous, and became so prior to Defendant's acts complained of herein.

61.     Defendant's unauthorized commercial use of MEC's Claw Icon Mark and MONSTER™ mark in connection with Defendant's business and the goods and services offered by Defendant has caused and is likely to continue to cause dilution of the distinctive qualities of the famous Claw Icon Mark and MONSTER™ mark.

62.    Defendant's acts are likely to tarnish, injure, or trade upon MEC's business, reputation or goodwill, and to deprive MEC of the ability to control the use of its Claw Icon Mark and MONSTER™ mark, and quality of products associated therewith.

63.    MEC is informed and believes, and on that basis alleges, that Defendant's acts of dilution have been willful and deliberate.

64.    Defendant, by its actions, has damaged MEC in an amount to be determined at trial.

65.    Defendant, by its actions, has irreparably injured MEC.    Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

(Copyright Infringement Under 17 U.S.C. § 501 *et seq.*)

66.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-65 of this Complaint as though fully set forth herein.

67.    This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq.*

68.   MEC is the owner of valid and enforceable copyrights in the Claw Icon Mark, can art and packaging, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.* ("Copyrighted Works").

69.   MEC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Works, and has obtained Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215 and VA 1-789-900.

70.   Defendant's deliberate copying of MEC's Copyrighted Works infringes and continues to infringe MEC's copyrights in violation of 17 U.S.C. § 501(a). Defendant is directly infringing on MEC's exclusive right to reproduce copies, make derivative works and distribute copies of its Copyrighted Works under 17 U.S.C. §§ 106(1)–(3).

71.   MEC is informed and believes, and on that basis alleges, that Defendant's infringement has been willful and deliberate.

72.   Defendant, by its actions, has damaged MEC in an amount to be determined at trial.

73.   Defendant, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

(Georgia Statutory Trademark Dilution Under O.C.G.A. § 10-1-451(b))

74.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-73 of this Complaint as though fully set forth herein.

75.    This is a claim for trademark dilution arising under O.C.G.A. § 10-1-451(b).

76.    Defendant's unauthorized and commercial use of the Claw Icon Mark and MONSTER mark in connection with its business and the goods and services offered by Defendant has caused and is likely to continue to cause dilution of the distinctive quality of MEC's famous Claw Icon Mark and MONSTER™ mark.

77.    Defendant's acts are likely to tarnish, injure, or trade upon MEC's business, reputation or goodwill, and to deprive MEC of the ability to control the use of its Claw Icon Mark and MONSTER™ mark, and quality of products associated therewith.

78.    MEC is informed and believes, and on that basis alleges, that Defendant's acts of dilution have been willful and deliberate.

79.    Defendant, by its actions, has irreparably injured MEC.  Such irreparable injury will continue unless Defendant is preliminarily and permanently

- 28 -

enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## IX.  SIXTH CLAIM FOR RELIEF

(Georgia Common-Law Unfair Competition)

80.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-79 of this Complaint as though fully set forth herein.

81.    This is a claim for unfair competition arising under Georgia common law.

82.    Defendant's acts complained of herein constitute trademark infringement and unfair competition under Georgia common law.

83.    By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with MEC in violation of the common law of the state of Georgia.

84.    MEC is informed and believes, and on that basis alleges, that Defendant's actions have been willful and deliberate.

85.    Defendant, by its actions, has damaged MEC in an amount to be determined at trial.

86.    Defendant, by its actions, has irreparably injured MEC.   Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## X.  SEVENTH CLAIM FOR RELIEF

(Deceptive Trade Practices Under O.C.G.A. § 10-1-372)

87.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-86 of this Complaint as though fully set forth herein.

88.    This is a claim for deceptive trade practices arising under O.C.G.A. § 10-1-372.

89.    By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby engaging in deceptive trade practices in violation of O.C.G.A. § 10-1-372.

90.    MEC is informed and believes, and on that basis alleges, that Defendant's actions have been willful and deliberate.

91.    Defendant, by its actions, has irreparably injured MEC.   Such irreparable injury will continue unless Defendant is preliminarily and permanently

enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## XI.  EIGHTH CLAIM FOR RELIEF

(Encroachment in Violation of O.C.G.A. § 23-2-55)

92.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-91 of this Complaint as though fully set forth herein.

93.    This is a claim for encroachment arising under O.C.G.A. § 23-2-55.

94.    By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby engaging in encroachment in violation of O.C.G.A. § 23-2-55.

95.    MEC is informed and believes, and on that basis alleges, that Defendant's actions have been willful and deliberate.

96.    Defendant, by its actions, has irreparably injured MEC.   Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff MEC respectfully requests the Court to award MEC the following relief:

A.    That the Court render a final judgment in favor of MEC and against Defendant on all claims for relief herein;

B.    That the Court render a final judgment declaring Defendant has violated and willfully violated the provisions of 15 U.S.C. § 1114 by infringing MEC's trademark rights in its U.S. Trademark Registrations listed above in paragraphs 10-11 of this Complaint, including, but not limited to, U.S. Trademark Registration Nos. 2,903,214; 3,434,821; 3,434,822; 3,963,668; 3,963,669; 4,011,301; and 4,051,650;

C.    That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting MEC's famous Claw Icon Mark and MONSTER™ mark;

D.    That the Court render a final judgment declaring that Defendant has violated and willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing MEC's Asserted Marks, including the Claw Icon Mark and MONSTER™ mark;

E.    That the Court render a final judgment declaring that Defendant has violated and willfully violated 17 U.S.C. § 501(a) by infringing MEC's Copyrighted Works;

F.    That the Court render a final judgment declaring that Defendant has violated and willfully violated O.C.G.A. § 10-1-451(b) by diluting MEC's famous

Claw Icon Mark and MONSTER™ mark;

G.     That the Court render a final judgment declaring Defendant has violated and willfully violated Georgia common law by unfairly competing with MEC;

H.     That the Court render a final judgment declaring Defendant has violated and willfully violated O.C.G.A. § 10-1-372 by engaging in deceptive trade practices;

I.     That the Court enter a final judgment declaring Defendant has violated and willfully violated O.C.G.A. § 23-2-55 by encroaching upon MEC's trademark rights;

J.     That Defendant, its officers, principals, agents, servants, employees, attorneys, successors, and assigns and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith temporarily, preliminarily and permanently enjoined from:

        a.     using MEC's Asserted Marks, including the Claw Icon Mark and MONSTER™ mark, in connection with Defendant's business or the goods or services offered by Defendant, in advertising, promoting, selling or offering to sell Defendant's unauthorized goods or services, and/or using

- 33 -

confusingly similar variations of the Claw Icon Mark, MONSTER™ mark, or any other of MEC's Asserted Marks in any manner that is likely to create the impression that Defendant or the goods or services offered by Defendant originate from MEC, are endorsed by MEC, or are connected in any way with MEC;

b.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products or services bearing or using the Claw Icon Mark, MONSTER™ mark, or any other of MEC's Asserted Marks, and/or any confusingly similar marks;

c.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing or using MEC's copyrighted Claw Icon design, copyrighted can designs, or any design substantially similar thereto;

d.    without permission or authorization from MEC, copying, reproducing, distributing, displaying, creating derivative works of MEC's copyrighted Claw Icon design and/or copyrighted beverage packaging designs and/or importing, manufacturing, or producing any products bearing

copies of MEC's copyrighted Claw Icon design and/or copyrighted can designs;

e. otherwise infringing or diluting MEC's Claw Icon Mark, MONSTER™ mark, or any of MEC's other trademarks;

f. falsely designating the origin of Defendant's goods or services;

g. unfairly competing with MEC in any manner whatsoever; and

h. causing a likelihood of confusion or injury to MEC's business reputation;

K. The Defendant be directed to file with this Court and serve on MEC within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction pursuant to 15 U.S.C. § 1116;

L. That Defendant be required to deliver and destroy all literature, advertising, goods, and other materials bearing the infringing marks pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503;

M. That Defendant be required to account to MEC for any and all profits derived by Defendant and all damages sustained by MEC by virtue of Defendant's acts complained of herein;

N. That Defendant be ordered to pay over to MEC all damages MEC has

sustained as a consequence of the acts complained of herein, subject to proof at trial;

O.     That MEC be awarded damages pursuant to 15 U.S.C. § 1117, together with prejudgment and post-judgment interest;

P.     That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

Q.     That Defendant's actions be deemed willful;

R.     That MEC be awarded its damages and Defendant's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if MEC elects, that MEC be awarded statutory damages pursuant to 17 U.S.C. § 504;

S.     That an award of reasonable costs, expenses and attorneys' fees be awarded to MEC pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504;

T.     That MEC be awarded restitution and disgorgement; and

U.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: October 10, 2014

By: /s/ Theodore H. Davis Jr.
Theodore H. Davis Jr.
Ga. Bar No. 212913
tdavis@kilpatricktownsend.com
James W. Faris Jr.
Ga. Bar No. 452293
JFaris@kilpatricktownsend.com
KILPATRICK TOWNSEND
& STOCKTON LLC
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309
Phone: (404) 815-6500
Facsimile: (404) 815-6555

*OF COUNSEL*
Lynda J. Zadra-Symes
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

- 37 -